**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., on behalf | : | |
| of certain of its members; and | : | Case No.: 2:12-cv-792 |
| TRUE THE VOTE, in its corporate | : | |
| capacity, | : | |
| | : | |
|      Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| OHIO SECRETARY OF STATE | : | |
| JON HUSTED, in his official capacity, | : | |
| | : | |
|      Defendant. | : | |

---

## COMPLAINT

---

Plaintiffs Judicial Watch, Inc. and True the Vote, by their attorneys, bring this action for declaratory and injunctive relief and allege as follows:

## INTRODUCTION

1.    Plaintiffs Judicial Watch, Inc. and True the Vote seek declaratory and injunctive relief to compel the State of Ohio to comply with its voter list maintenance obligations under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-6.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States, and under 42 U.S.C. § 1973gg-9(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

3.      Venue in this Court is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4.      Plaintiff Judicial Watch, Inc. ("Judicial Watch") is a non-profit organization that seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law. Judicial Watch brings this action on behalf of its members who are registered to vote in the State of Ohio.

5.      Plaintiff True the Vote ("True the Vote") is a non-profit organization that seeks to restore truth, faith, and integrity to local, state, and federal elections. True the Vote brings this action in its corporate capacity.

6.      Defendant Jon Husted is the Secretary of State of the State of Ohio ("the Secretary") and has served in this capacity since January 9, 2011. Because the State of Ohio has designated the Secretary as the "chief State election official" responsible for coordination of its responsibilities under the NVRA (*see* 42 U.S.C. § 1973gg-8, Plaintiffs Judicial Watch, Inc. and True the Vote bring this action against the Secretary in his official capacity.

## FACTUAL BACKGROUND

7.      Section 8 of the NVRA requires that "[i]n the administration of voter registration for elections for Federal office, each State shall … conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant … " 42 U.S.C. § 1973gg-6(a)(4). Section 8 of the NVRA also mandates that any such voter list maintenance programs or activities "shall be uniform, nondiscriminatory, and in compliance with

the Voting Rights Act of 1965 (42 U.S.C. § 1973 *et seq.*)," among other important protections. 42 U.S.C. § 1973gg-6(b)(1).

8.     Section 8 of the NVRA also requires that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection … all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. …"  42 U.S.C. § 1973gg-6(i).

9.     The most recent and reliable, publicly-available data regarding voting age population and voting registration, by county, for the State of Ohio is the 2010 Decennial U.S. Census ("2010 U.S. Census"), released by the U.S. Government beginning in February of 2011, and the voter registration data provided by the State of Ohio to the U.S. Election Assistance Commission ("EAC Report") for the general election held in November of 2010, published on June 30, 2011.  The 2010 U.S. Census contains data on voting age population in 2010, by county, for the State of Ohio.  The EAC report contains data on the number of persons on the voter registration rolls in 2010, by county, in the State of Ohio.

10.     Based on an examination of the data in the 2010 U.S. Census and the EAC Report, the number of individuals listed on voter registration rolls in the following three counties in the State of Ohio exceeds 100% of the total voting age population in these counties:  Auglaize, Wood, and Morrow.  (And in both Auglaize and Wood, the voter registration rolls exceed 105% of total voting age population.)  This data demonstrating the discrepancy in voter registration rolls to total voting age population in each of these counties constitutes *prima facie* evidence that the State of Ohio has failed to comply with its voter list maintenance obligations under Section 8 of the NVRA.

11.     The data in the 2010 U.S. Census and the EAC Report also shows that the following thirty-one counties in the State of Ohio (in order of highest to lowest percentage) have voter registration rolls that contain between 90% and 100% of total voting age population: Lawrence, Cuyahoga, Henry, Medina, Mahoning, Delaware, Putnam, Hancock, Fairfield, Geauga, Van Wert, Lucas, Montgomery, Jackson, Ottawa, Stark, Hamilton, Miami, Franklin, Gallia, Greene, Jefferson, Trumbull, Lorain, Wyandot, Athens, Harrison, Clermont, Licking, Logan, and Erie Counties. This data further demonstrates that the State of Ohio has failed to satisfy its voter list maintenance obligations under Section 8 of the NVRA.

12.     According to the U.S. Census Bureau, the average rate of voter registration to total voting age population during the presidential election year of 2008 was 71%, yet in Ohio, 34 of its 88 counties have a rate that exceeds 90%.

13.     The failure of the State of Ohio to satisfy its voter list maintenance obligations is contributing to a larger, nationwide problem.  According to a February 2012 study published by the non-partisan Pew Center for the States entitled "Inaccurate, Costly, and Inefficient," inaccurate voter registration lists are rampant across the United States.  The Pew study found that approximately 24 million active voter registrations throughout the United States—or one out of every eight registrations—are either no longer valid or are significantly inaccurate.  The Pew study also found that more than 1.8 million deceased individuals are listed as active voters nationwide, and that approximately 2.75 million people have active registrations in more than one state.

14.     On February 6, 2012, Judicial Watch sent a letter to the Secretary notifying him that the State of Ohio was in violation of Section 8 of the NVRA and that, as the chief State election official in the State of Ohio, he is responsible for compliance with Section 8 of the

NVRA. The letter explained that, according to 2010 U.S. Census data and publicly available voter registration data, the number of individuals registered to vote in three counties in the State of Ohio exceeds those counties' total voting age population. The letter identified each of the three counties by name and informed the Secretary that a lawsuit may be brought against him if the State of Ohio did not comply with its voter list maintenance obligations under Section 8 of the NVRA.

15.     The letter also requested that the Secretary make available for public inspection all records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency" of official lists of eligible voters in the State of Ohio during the past two years, explaining that Section 8 of the NVRA required such records to be made available.

16.     The Secretary, through his Chief Legal Counsel, responded in writing to Judicial Watch's letter on March 2, 2012, stating "We share your concerns about the accuracy of our voting lists" and identifying a Directive, issued on April 18, 2011, instructing the county boards of elections on procedures for conducting programs to remove ineligible voters from the voter rolls due to changes in a registrant's residence. The Secretary's letter did not identify any efforts by the State of Ohio to ensure that the county boards of election were following the procedures described in the nearly one-year old directive. Nor did it identify any other programs or activities undertaken by the State of Ohio to remove ineligible voters from the voter rolls due to changes in a registrant's residence. A copy of the Directive was included with the letter.

17.     The Secretary's letter also did not identify any programs and activities undertaken by the State of Ohio to remove ineligible voters from the voter rolls due to the death of the registrant, or any efforts to instruct county boards of election on procedures for removing

deceased registrants from the voter rolls. Nor did it identify any other voter list maintenance programs or activities undertaken by the State of Ohio.

18.     In the letter, the Secretary asserted that the State of Ohio's efforts to maintain accurate voter rolls "have been hampered … by the restrictions and seemingly inconsistent provisions of the NVRA" and noted that he had written a letter to U.S. Attorney General Eric Holder "to discuss possible solutions," but had not received a response.

19.     The only other document produced by the Secretary with his letter was a copy of the letter he had sent to Attorney General Holder, dated February 10, 2012. In this letter to Attorney General Holder, the Secretary admitted that the State of Ohio has not fulfilled its duty under Section 8 of the NVRA to make a reasonable effort to remove ineligible voters from its voter rolls. The letter from the Secretary also acknowledged that the voter rolls for two counties in the State of Ohio contained more registered voters than the total voting age population in those counties.

20.     As of the date of this Complaint, no further response from the Secretary or his office has been received by the Plaintiffs. Nor has the Secretary produced any additional documents regarding any other voter list maintenance programs or activities undertaken by the State of Ohio.

21.     In light of the Secretary's letter and the lack of any further response from the Secretary, any further efforts to secure compliance with Section 8 of the NVRA would be futile.

**PLAINTIFF JUDICIAL WATCH**

22.     Judicial Watch has approximately 9,480 members in the State of Ohio. As a membership organization, Judicial Watch represents the interests of these members, at least some

of whom are lawfully registered to vote and have the right to vote in the State of Ohio, including the right to vote in elections for federal office.

23.     A person becomes a member of Judicial Watch by making a financial contribution, in any amount, to the organization.  The financial contributions of members are by far the single most important source of income to Judicial Watch and provide the means by which the organization finances its activities in support of its mission.  Each of Judicial Watch's 9,480 members in the State of Ohio has made at least one financial contribution to Judicial Watch over the past two years and thus helped to finance the activities of the organization during this time period.

24.     Judicial Watch also solicits the views of its members in carrying out its activities in support of its mission, including the views of its members in the State of Ohio.  The views of Judicial Watch's members exert a significant influence over how Judicial Watch chooses the activities in which it engages in support of its mission.

25.     Over 100 members of Judicial Watch who are lawfully registered to vote in the State of Ohio have informed Judicial Watch that they are concerned about the State of Ohio's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA and wish Judicial Watch to take action on their behalf to protect their right to vote.  The views of these members were a substantial factor weighing in favor of the initiation of this lawsuit.

26.     Protecting the rights of members of Judicial Watch who are lawfully registered to vote in the State of Ohio is directly germane to Judicial Watch's mission of promoting integrity, transparency, and accountability in government and fidelity to the rule of law, as is ensuring compliance with the voter list maintenance obligations of Section 8 of the NVRA and protecting

the integrity of the election process in general.  It also is well within the scope of the reasons why members of Judicial Watch join the organization and continue to support its mission.

27.     Members of Judicial Watch who are lawfully registered to vote in the State of Ohio not only have the constitutional right to vote in elections held in the State of Ohio, including elections for federal office, but they also have a statutory right to the safeguards and protections set forth in the NVRA, including the voter list maintenance obligations of Section 8 of the NVRA.

28.     The failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA is injuring the right to vote of members of Judicial Watch who are lawfully registered to vote in the State of Ohio.  More specifically, it is burdening members' constitutional right to vote by undermining their confidence in the integrity of the electoral process and discouraging them from voting.  Because the State of Ohio has failed and is failing to satisfy its list maintenance obligations under Section 8 of the NVRA, lawfully registered voters, including members of Judicial Watch, are being deprived of any certainty that their votes will be given due weight and will not be cancelled out by the votes of persons who are not entitled to vote and therefore are being injured.

29.     The failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA also is harming the statutory rights of members of Judicial Watch who are lawfully registered to vote in the State of Ohio.  Specifically, because these members have registered to vote in the State of Ohio, they have a statutory right to vote in elections for federal office that comply with the procedures and protections required by the NVRA, including the voter list maintenance obligations set forth in Section 8 of the NVRA.  The State of Ohio's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA therefore is

injuring the statutory rights of members of Judicial Watch who are lawfully registered to vote in the State of Ohio.

30.     Absent action by Judicial Watch, it is unlikely that any individual member of Judicial Watch who is lawfully registered to vote in the State of Ohio would have the ability or the resources to take action to protect his or her rights or redress his or her injuries with respect to the State of Ohio's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA.

### PLAINTIFF TRUE THE VOTE

31.     True the Vote regularly obtains official lists of registered voters from States across the nation, including the State of Ohio, and uses these lists to conduct programs in furtherance of True the Vote's mission of restoring truth, faith, and integrity to local, state, and federal elections.  Because True the Vote makes use of these lists in conducting its various programs, it relies on States, including the State of Ohio, to provide lists that are reasonably accurate and current and reasonably maintained.

32.     One such program of True the Vote seeks to analyze and verify official lists of registered voters and detect errors in those lists.  More specifically, True the Vote trains volunteers to review voter lists and to compare those lists to other publically available data. When a volunteer identifies registrations that appear to be duplicates or registrations of persons who are deceased, have relocated, or otherwise are ineligible to vote in a particular jurisdiction, those registrations are flagged and complaints are filed with appropriate elections officials.  The goal of this particular program is to improve the accuracy and currency of voter lists above and beyond the minimum requirements of the law.  This program is among the largest, if not the

largest, of all of True the Vote's various programs and is an essential, integral part of True the Vote's mission.

33.    As part of its voter list verification program, True the Vote obtained voter lists from the State of Ohio, recruited and trained volunteers to analyze and verify these lists, and began the process of analyzing and verifying them.

34.    The failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA has injured and is injuring True the Vote.  Because the State of Ohio has failed to satisfy its voter list maintenance obligations, the voter lists that True the Vote obtained from the State of Ohio are inaccurate and out of date, making it more difficult for True the Vote to use these lists in furtherance of its mission than it would have been if the State of Ohio had satisfied its voter list maintenance obligations under Section 8 of the NVRA.  True the Vote has suffered an injury as a result.

35.    In addition, the failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA has injured and is injuring True the Vote by impairing True the Vote's ability to achieve an essential, integral part of its mission, namely, its voter list verification program.  True the Vote's voter list verification program relies on the States to conduct the reasonable voter list maintenance programs and activities required by Section 8 of the NVRA.  The goal of True the Vote's voter list verification program is to improve the accuracy and currency of voter lists above and beyond the minimum requirements of the law. True the Vote's non-for-profit, volunteer efforts supplement the voter list maintenance programs and activities required of the States under Section 8 of the NVRA, but cannot duplicate or replace the States' taxpayer-funded voter list maintenance programs and activities.  Because the State of Ohio has failed to satisfy its voter list maintenance obligations under Section 8 of the

NVRA, True the Vote is impaired in its ability to carry out its voter list verification program successfully in the State of Ohio and is injured as a result.

36.     Moreover, the State of Ohio's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA also has injured and is injuring True the Vote by causing it to divert resources away from other programs in order to devote those same resources to its voter list verification program.  For example, among its various programs to restore election integrity, True the Vote trains and mobilizes volunteers to work as election monitors. As part of this program, True the Vote creates instructional videos to recruit election monitors, holds training sessions and produces reference guides to educate election monitors, and directs volunteers who wish to serve as election monitors to appropriate channels.  Because the State of Ohio failed to satisfy its voter list maintenance obligations under Section 8 of the NVRA, True the Vote has had to expend less of its scarce resources on programs such as its election monitoring program in order to expend more resources on its voter list verification program.

37.     As of August 10, 2012, True the Vote has expended over 150 hours of organizational time training volunteers to analyze and verify the voter lists that True the Vote obtained from the State of Ohio for True the Vote's voter list verification program.  As of this same date, True the Vote has only expended approximately 50 hours in support of its election monitoring program in the State of Ohio.  True the Vote estimates that, due to the failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA, it has diverted approximately 100 hours of organizational time away from its election monitoring program in order to devote those same scarce resources to its voter list verification program, causing injury to True the Vote as a result.

## CLAIM FOR RELIEF

### (Violation of the NVRA: Failure to Conduct List Maintenance)

38.     Plaintiffs reallege paragraphs 1 through 37 as if fully stated herein.

39.     Defendant has failed to fulfill the State's obligation to make reasonable efforts to remove the names of ineligible voters from Ohio's voter registration rolls, in violation of Section 8 of NVRA (42 U.S.C. § 1973gg-6).

40.     Plaintiff True the Vote and members of Plaintiff Judicial Watch have suffered irreparable injury as a direct result of Defendant's failure to fulfill the State of Ohio's obligation to make reasonable efforts to remove the names of ineligible voters from Ohio's voter registration rolls in violation of Section 8 of the NVRA.

41.     Plaintiff True the Vote and members of Plaintiff Judicial Watch will continue to suffer irreparable injury by Defendant's failure to fulfill the State of Ohio's obligation to make reasonable efforts to remove the names of ineligible voters from Ohio's voter registration rolls in violation of Section 8 of the NVRA unless and until Defendant is enjoined from continuing to violate the law.

42.     Plaintiff True the Vote and members of Plaintiff Judicial Watch have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for entry of a judgment:

1.      Declaring Defendant to be in violation of Section 8 of the NVRA;

2.      Enjoining Defendant from failing or refusing to comply with the voter list

maintenance obligations of Section 8 of the NVRA in the future;

3.      Ordering Defendant to pay Plaintiffs' reasonable attorney's fees, including

litigation expenses and costs, pursuant to 42 U.S.C. § 1973gg-9(c); and

4.      Granting Plaintiffs any and all further relief that this Court deems just and proper.


Dated: August 30, 2012                         Respectfully submitted,

                                               Paul J. Orfanedes*
                                               Chris Fedeli*
                                               JUDICIAL WATCH, INC.
                                               425 Third Street S.W., Ste. 800
                                               Washington, DC 20024
                                               Tel: (202) 646-5172
                                               Fax: (202) 646-5199
                                               Email:  porfanedes@judicialwatch.org
                                                       cfedeli@judicialwatch.org

                                               */s/ David R. Langdon*
                                               David R. Langdon (OH Bar No. 0067046)
                                                  *Trial Attorney*
                                               Joshua B. Bolinger (OH Bar No. 0079594)
                                               LANGDON LAW LLC
                                               8913 Cincinnati-Dayton Rd.
                                               West Chester, Ohio 45069
                                               Tel: (513) 577-7380
*Of Counsel:*                                  Fax: (513) 577-7383
J. Christian Adams                             Email: dlangdon@langdonlaw.com
ELECTION LAW CENTER, PLLC                             jbolinger@langdonlaw.com
300 N. Washington Street, Ste. 405
Alexandria, VA 22314                           *Attorneys for Plaintiffs*

                                               *pending admission pro vac vice

13